CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2018 MAR -8  AM 11: 02

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| SHEILA DAWN PARKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:16-CV-0178-BL |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff/Claimant seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  *See* Compl. (doc. 1).  The Commissioner has filed an answer, *see* Def.'s Answer (doc. 9), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 11), including the hearing before the Administrative Law Judge ("ALJ").  The parties have briefed the issues.  *See* Pl.'s Br. (doc. 13); Def.'s Br. (doc. 15).  The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed before a United States Magistrate Judge.  After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] Title II governs disability insurance benefits, *see* 42 U.S.C. §§ 401-34, and Title XVI governs supplemental security income for the aged, blind, and disabled, *see id.* §§ 1381-1383f.  Final determinations under Title XVI are subject to the same judicial review as provided in § 405(g).  *See* 42 U.S.C. § 1383(c)(3).  The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

## I.    BACKGROUND

Plaintiff filed applications for DIB and SSI in December 2013 alleging disability beginning August 2, 2010. R. 155, 162. She claimed to be disabled due to various physical impairments. R. 185. Because Plaintiff had prior applications for benefits that had been denied on July 31, 2012,[2] the ALJ addressed "only the issue of disability beginning August 1, 2012." R. 11. As calculated by the ALJ, her date of last insured ("DLI") is December 31, 2015. *See* R. 13. Therefore, the most relevant time period for her applications and the Court's review commenced in August 2012 and continued through December 2015.

The Commissioner denied the applications initially and on reconsideration. *See* R. 94, 106. On March 18, 2015, Administrative Law Judge ("ALJ") Dan Dane held a hearing on Plaintiff's claims. *See* R. 37-50. On June 17, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that existed in significant numbers in the national economy. R. 11-22. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4))[3] the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the August 1, 2012, having not worked since 2010. R. 13. The ALJ next determined that Plaintiff suffers from the following severe impairments: degenerative disc disease, spondylosis, and radiculopathy of lumbar and cervical spine, status post bilateral hemilaminotomy at L4-5 and obesity. R. 13-14. Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the

---

[2]The ALJ found no reason to reopen Claimant's prior applications for benefits. R. 11.

[3]In March 2017, the Social Security Administration amended many regulations. However, the pertinent version for this case is the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam). Except to bring attention to the effective date of an amended provision, this recommendation will cite to the applicable version without parenthetical year information.

listings.[4]  R. 14.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[5] to

perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a).[6]  *See* R. 14.  The ALJ

found that Plaintiff could (1) lift/carry five pounds frequently and ten pounds occasionally; (2) stand

or walk up to two hours; and (3) sit for up to six hours in an eight-hour workday.  *Id.*  Based upon

the RFC determination and testimony from a vocational expert ("VE"), the ALJ concluded that

Plaintiff could not perform her past relevant work, but could perform jobs that exist in significant

numbers in the national economy.  R. 20-22.  At Step 5 of the evaluative sequence, the ALJ thus

found that Plaintiff was not disabled within the meaning of the Social Security Act between August

1, 2012, and the date of the ALJ's decision.  *See* R. 22.

The Appeals Council received and considered an attorney brief (Ex. 22E) when it denied

review on August 2, 2016.  *See* R. 1-4.  The ALJ's decision is the Commissioner's final decision and

---

[4]Sections 404.1525 and 416.925 explain the purpose and use of the listings of impairments.

[5]Sections 404.1545(a)(1) and 416.945(a)(1) explain that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations."  When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

[6]The applicable regulations address physical exertion requirements and explain:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).  To determine whether an individual has the ability to perform the full range of sedentary work from an exertional standpoint, Program Policy Statement (PPS) 101 elaborates:
> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

Titles II & XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

3

is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on September 28, 2016. *See* Compl. She presents a single issue for review – whether substantial evidence supports the ALJ's RFC finding that she is capable of a full range of sedentary work. *See* Pl.'s Br. at 1.

## II.    LEGAL STANDARD

In general,[7] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)); *accord* 20 C.F.R. § 416.972(a)-(b).  To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).  If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448.  The Commissioner

---

[7]The Act provides an alternate definition of disability for individuals under the age of eighteen, *see* 42 U.S.C. § 1382c(a)(3)(C), and blind individuals who are fifty-five years of age or older, *see* 42 U.S.C. § 423(d)(1)(B).  These provisions are inapplicable on the current facts.

must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461.

Nevertheless, "the substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the [Commissioner's] decision." *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986). The courts instead "must consider the record as a whole, and the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* (citations and internal quotation marks and alterations omitted); *accord Pena v. Colvin*, No. 5:14-CV-016-C, 2015 WL 738255, at *4 (N.D. Tex. Feb. 20, 2015) (adopting recommendation

5

of Mag. J.); *Lara v. Colvin*, No. 5:13-CV-177-C, 2014 WL 988547, at *3 (N.D. Tex. Mar. 13, 2014) (same). However, the courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

### III.    ANALYSIS

In this appeal, Claimant challenges the substantiality of the evidence to support the ALJ's RFC assessment. *See* Pl.'s Br. at 1. More particularly, she challenges the finding that she can perform the requirements of sedentary work with no additional manipulative limitations. *See id.* at 4-9. She quarrels with the ALJ's reliance on a February 2014 consultative examination by John Roaten, M.D., because the evaluation preceded the significant onset of her right shoulder pain and associated symptoms. Pl.'s Br. at 9. She also disagrees with the ALJ's statement that objective medical evidence did not document significant objective findings, such as weakness and numbness, related to her brachial neuritis and ulnar neuropathy. *See id.* She contends that the ALJ's incorrectly assesses the evidence because she reported weakness and/or numbness at each appointment with Abilene Bone & Joint, L.L.P. ("ABJ") from June through September 2014. *See id.*

On February 8, 2014, Dr. Roaten examined Claimant with respect to her alleged disability. R. 293-298. He first recorded a history of back and shoulder problems in addition to hepatitis C. R. 293. Physical examination revealed full strength in all extremities and she had normal range of motion in all respects. R. 296-97. Dr. Roaten opined:

> The claimant can be expected to sit, stand and walk normally in an 8 hour workday with normal breaks. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The claimant has mild limitations with

lifting and carrying due to low back pain. There are no limitations on bending, stooping, crouching, squatting and so on and the claimant will be able to perform these frequently. There are no manipulative limitations on reaching, handling, feeling, grasping, fingering, and the claimant will be able to perform these frequently. There are no relevant visual, communicative or work place environmental limitations.

R. 298.

In May 2014, Claimant visited Christopher S. Eddleman, M.D., "with a primary complaint of low back pain and right lower extremity radiculopathy" that had "been progressively worsening for several weeks." R. 1101. Dr. Eddleman recognized that Claimant "had similar symptoms in 2011 and had an MRI at that time that demonstrated a L405 degenerative disc with some foraminal stenosis" and "had a recent MRI of the lumbar spine that did not demonstrate any significant changes." *Id.* He also noted that Claimant had neck pain after a fall in February "but cervical imaging at that time did not demonstrate any acute changes despite having diffuse degenerative changes present." *Id.* Dr. Eddleman assessed a lumbar radiculopathy that did not require surgery. R. 1102. He recommended that Claimant seek out a physical therapy and consult with a pain specialist. *Id.*

The next month, Claimant began visiting ABJ for cervical and lumbar spine pain. R. 1161-65. The lumbar spine pain had started ten years earlier and was stable. R. 1161. However, as of June 2014, the lumbar pain was "getting worse" and radiating into her right leg. *Id.* The onset for her cervical pain was six months earlier when she had a fall, but had worsened and she reported weakness/numbness in her left arm. *Id.* Claimant had complained about numbness and pain for about the last four months. *Id.* Physical examination revealed normal range of motion for all joints, no atrophy in the cervical spine, normal sensory in right and left arms and hands, pain in lumbar spine, and normal strength in lower extremities. R. 1163-65. Two assessments resulted: (1) acute

7

L5 radiculopathy on the right and (2) acute cervical radiculitis. R. 1165. X-rays of the cervical spine were ordered, an MRI was reviewed, and new medications for the cervical radiculitis were prescribed. *Id.* Paul Watts, D.O., reviewed and approved the visit details on July 11, 2014. R. 1166.

On June 23, 2014, Claimant underwent an MRI at Hendrick Health System, Department of Radiology & Nuclear Medicine. R. 1159. The medical record notes a history of brachial neuritis and lists a number of findings resulting in an assessment of "Multiple levels of degenerative disc disease and degenerative changes of the cervical spine." R. 1159-60.

On July 1, 2014, Claimant visited ABJ for a follow-up for her cervical and lumbar spine pain. R. 1152-58. Associated symptoms for both included weakness and numbness. R. 1152. Medications provided mild improvement for both areas and relieved the symptoms related to the cervical pain. *Id.* A review of Claimant's systems was positive for numbness, tingling, and weakness. R. 1153-54. Physical examination revealed normal range of motion for all joints, no atrophy in the cervical spine, normal sensory in right and left arms and hands, normal strength in all upper extremities, normal neurovascular in the upper extremities, pain in lumbar spine, and normal strength and range of motion in lower extremities. R. 1154-56. Three assessments resulted: (1) cervical spondylosis, (2) lumbosacral spondylosis, and (3) brachial neuritis in conjunction with degenerative lumbar intervertebral disc. R. 1157. The latter assessment resulted in a change of medication, an increase in dosage, and a referral for physical therapy.[8] *Id.* With respect to the other assessments, Dr. Watts noted "pain and tingling into the left arm;" right leg pain, review of the MRI, and

---

[8]Based upon the referral, Claimant attended physical therapy from July 8, 2014, through August 22, 2014. *See* R. 1122-29. Physical therapy records indicate that Claimant "will benefit from skilled therapy services" and had a good prognosis. R. 1127. She was discharged from physical therapy on August 22, 2014, because she had "made limited progress" despite being "very compliant and consistent in her attendance" and complying with therapy at home. R. 1123.

increased medication for cervical spondylosis. *Id.*

Upon referral from Dr. Watts, Claimant visited Midwest Rehabilitation & Occupational Medicine on July 10, 2014, for an electromyography ("EMG") of her left upper extremity. R. 1106. Ferral Endsley, D.O., noted a five-month history of left arm/elbow pain subsequent to a fall on ice. *Id.* At that time, Claimant claimed "of some tingling in the left hand but reported "no problems with the right upper extremity or with her lower extremities." *Id.* His review of her systems revealed pain in various areas, as well as numbness, tingling, and weakness. *Id.* His physical examination revealed essentially normal results and "no evidence of neuropathy." R. 1107. The EMG showed nothing abnormal. R. 1109.

On August 1, 2014, Claimant visited ABJ for follow-up for cervical spine pain. R. 1149. Associated symptoms included weakness, but numbness was a persistent negative. *Id.* A review of Claimant's systems was positive for weakness, but negative for numbness. R. 1150. Physical examination revealed normal range of motion for all joints, no atrophy in the cervical spine, normal sensory in right and left arms and hands, normal strength in all upper extremities, and normal neurovascular in the upper extremities. R. 1150-51. Dr. Watts assessed cervicalgia, cervical spondylosis, and brachial neuritis and noted that physical therapy had not been helping. R. 1151.

Claimant went to Hendrick Medical Center on August 18, 2014, for X-rays of her shoulder. R. 1111-20. She complained of "right shoulder pain." R. 1115. X-rays showed "No focal abnormality," "normal glenohumeral articulation," "No evidence for acute fracture," and an "unremarkable" AC joint. R. 1119.

A week later, Claimant underwent a medial branch block of the cervical spine. R. 1146. Dr. Watts performed the surgery and noted that Claimant "tolerated the procedure well" and "no

complications" arose. R. 1147. The next day, Claimant visited ABJ for right shoulder pain that had started two weeks prior. R. 1141. Associated symptoms included weakness, but numbness was a persistent negative. *Id.* A review of Claimant's systems was positive for weakness, but negative for numbness and tingling. R. 1142. Physical examination revealed normal range of motion for wrist and elbow, no atrophy in the cervical spine, abnormal "Supraspinatus" and "Ext Rotation" strength tests; limited range of motion of right shoulder due to pain; normal strength in all upper extremities, and normal neurovascular in the upper extremities. R. 1143-44. The assessment was a shoulder sprain resulting in a MRI of the right shoulder and prescribed medication. R. 1144.

On September 5, 2014, Claimant underwent another MRI at Hendrick Health System. R. 1139. The MRI report states: "Shoulder pain for three weeks, limited range of motion, stable." *Id.* Comparing the MRI of the right shoulder to X-rays of August 18, 2014 showed: "Thickening and abnormal signal of the supraspinatus tendon consistent with tendinopathy." *Id.* About a week later, Claimant visited Dr. Watts at ABJ for follow-up for right shoulder pain. R. 1131-38. Dr. Watts noted that "symptoms are relieved by pain medications," Claimant experiences "mild improvement of pain with medication, associated symptoms include weakness, and persistent negatives include "numbness." R. 1131. His review of Claimant's systems again was positive for weakness, but negative for numbness and tingling. R. 1132-33. Physical examination revealed normal range of motion for wrist and elbow, no atrophy in the cervical spine, abnormal "Supraspinatus" and "Ext Rotation" strength tests for right shoulder; limited range of motion of right shoulder due to pain; normal strength in all upper extremities, and normal neurovascular in the upper extremities. R. 1133-35. Claimant received a steroid injection in her right shoulder joint, which she tolerated well. R. 1136-37. Dr. Watts assessed a shoulder sprain, cervical spondylosis, lumbosacral spondylosis,

and impingement syndrome. R. 1137. With respect to the shoulder strain, Dr. Watts planned to continue current medication and recommended steroid injection and physical therapy. *Id.*

On March 31, 2015, Claimant visited Dr. Eddleman for worsening left upper extremity discomfort and bilateral shoulder pain. R. 1169. He noted that she "had been seeing Dr. Watts for pain management but was fired due to recreational drug use." *Id.* He further noted "a recent MRI that demonstrated diffuse degenerative changes but most apparent at C5-7 where there is some impingement of the exiting nerve roots on the left." *Id.* He also noted that the August 2014 EMG showed "no evidence of neuropathy or radiculopathy." *Id.* His primary assessment was cervical radiculopathy with a secondary assessment of "Neuropathy in Other Dis - 357.4." *Id.* He recommended that Claimant consult with a pain specialist and a neurologist, but he did not believe that she had a surgical issue at that time. R. 1170.

Claimant cites to most of these medical records to discount the weight to be given to the consultative examination of Dr. Roaten and to challenge the decision of the ALJ to not include any manipulative limitations in his RFC determination. However, even though these records followed the February 2014 examination by Dr. Roaten, they provide no sufficient basis to discount the weight to be given to Dr. Roaten's medical opinions or to find that substantial evidence does not support the ALJ's decision. Despite these later medical records, a reasonable mind might accept the ALJ's conclusion that no manipulative limitation was warranted in his RFC determination.

The ALJ specifically considered the cited records and others. *See* R. 15-17. In none of the cited records does a physician opine that Claimant would be limited in any manipulative activities such as reaching, handling, feeling, grasping, or fingering, whereas Dr. Roaten specifically opined that Claimant would not be limited in such activities. Furthermore, Claimant's problems with her

11

right shoulder did not commence until early August 2014 and medical records show that medication relieved symptoms and mildly improved the pain. Additionally, although there were some changes to Claimant's condition because of the right shoulder pain commencing in August 2014, the medical assessment was merely a shoulder sprain and Claimant retained normal strength in all upper extremities – albeit with some abnormal strength tests. The cited medical records do not fairly detract from the weight of Dr. Roaten's specific opinions. This Court does not reweigh the evidence or substitute its judgment for that of the Commissioner. The Court instead must consider the record as a whole. Considering the record as a whole, the Court should find that substantial evidence supports the conclusion of the ALJ that no manipulative limitation was warranted within the RFC determination.

## IV.    CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that substantial evidence supports the ALJ's finding that she can perform the requirements of sedentary work with no additional manipulative limitations. The undersigned thus **RECOMMENDS** that the district court **AFFIRM** the Commissioner's decision to deny benefits. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings in accordance with normal procedures.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or

12

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** \_\_\_\_\_ **day of March, 2018.**

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**